Brown v. Kahnweiler.

JAMES C. BROWN, executor, &c.,

*v.*

SIMON KAHNWEILER and wife.

Defendants, mortgagors, in their answer in a foreclosure suit upon the mortgage (which was under seal and given to secure a bond under seal), after denying the allegation in the bill, that at the time of giving the mortgage the mortgagors were indebted to the mortgagee, made, by way of defence to the mortgage, a statement of the circumstances under which, as they alleged, the mortgage was given. They offered no evidence in support of that statement but relied on it as evidence, on the ground that it was responsive to the above-mentioned allegation of indebtedness in the bill. *Held*, that that allegation of indebtedness was not necessary, the bond and mortgage being under seal; and also, that the answer was not evidence of the facts set up in the statement.

Cross-bill to foreclose. On final hearing on pleadings and proofs.

*Mr. J. R. Hardenburgh* and *Mr. R. Gilchrist*, for the complainant.

*Mr. J. Wilson*, for the defendants.

THE CHANCELLOR.

The defendants gave two mortgages on two lots of land in Trenton, conveyed to Simon Kahnweiler by A. T. Geis-

senhainer by deed dated October 2d, 1865. One of those mortgages was given to Geissenhainer on the 3d of November, 1868, and was on only one of the lots. The other was on both lots, and was dated November 26th, 1870. It was given to Elijah Brown. On the 16th of October, 1873, Joseph C. Taylor, to whom Geissenhainer had assigned his mortgage, filed his bill in this court to foreclose that mortgage, making Kahnweiler and his wife and Henry S. Disbrow, to whom Brown had assigned his mortgage, parties to the suit.

Kahnweiler and his wife answered, setting up as a defence against the Brown mortgage, that when it was given Mrs. Kahnweiler was the owner of the mortgaged premises, and that it was given by her and her husband to Brown to enable him to raise the money therefor, which was to be Kahnweiler's contribution to the capital of a copartnership then recently formed between him and Brown and one Marcus Newman; that after the mortgage was given the partnership was abandoned, and that no business was ever done under it; that Brown did not raise any money for Kahnweiler upon the mortgage, nor pay or deliver to Kahnweiler or his wife any money or consideration for it or the bond which it was given to secure; that they had demanded the bond and mortgage from Brown, but that he had refused to deliver them up; and they charged that Disbrow knew, or ought to have known, when he took the assignment, that Brown had no right to assign the bond and mortgage to him. They further stated that Kahnweiler gave notice to Disbrow (after the assignment had been made by Brown to the latter, however,) that the assignment was unauthorized.

It appears that when that bill was filed Disbrow was not the owner of the bond and mortgage, but had assigned them, by assignment dated on the 9th of August, 1871, to John Brown, who died in 1872, and the bond and mortgage were, at the time of the filing of Taylor's bill, held by John Brown's executor, the complainant in the cross-bill. The executor, having been admitted as a party defendant, filed his answer,

insisting upon the validity of the Brown mortgage in his hands, and after filing that answer he filed the cross-bill. That bill states the making and delivery of the Brown bond and mortgage, the acknowledgment and registry of the latter, the assignment thereof by Brown to Disbrow, and by the latter to John Brown, the complainant's testator; the death of the testator, and the issuing of letters testamentary of his estate to the complainant in this state. It prays an answer on oath, and seeks the foreclosure and sale of the mortgaged premises, to pay the complainant's mortgage.

Kahnweiler and his wife set up in their answer the same defence set up in their answer in the original cause. They have offered no testimony except the copartnership agreement, and Elijah Brown's receipt to Kahnweiler for the bond and mortgage, and a letter from Brown to Kahnweiler. They insist that they are entitled to the benefit of their denial, in their answer, of the allegation in the complainant's bill that Kahnweiler was indebted to Elijah Brown when the bond and mortgage to him were given, and are entitled to the benefit of their statement, in their answer, of the transaction in which the bond and mortgage originated, on the ground that the denial and statement are responsive to the bill. The bill, indeed, states that Kahnweiler was indebted to Elijah Brown at the time of the date of the bond and mortgage, in the amount of the principal secured to be paid thereby. That, however, was not a necessary allegation. The complainant's mortgage would have been sufficiently pleaded had he merely stated that it was duly executed, delivered and acknowledged. *Wanmaker's ex'rs* v. *Van Buskirk, Sax.* 685; *Farnum* v. *Burnett,* 6 *C. E. Gr.* 87, 89; *Day* v. *Perkins,* 2 *Sandf. Ch.* 359, 365. The bond and mortgage being sealed instruments, it is not necessary to prove a consideration; a consideration is presumed. It was not necessary, therefore, to aver the existence of any consideration. Nor is the denial in the answer responsive on this point. The execution and delivery of the bond and mortgage, and the acknowledgment of the latter, are

admitted in the answer. The defendants seek to avoid those instruments. They are bound by the principles and practice of this court to prove the facts on which they rely for their defence. *Bray's ex'rs* v. *Hartough*, 3 *Gr. Ch.* 46; *Wanmaker's ex'rs* v. *Van Buskirk, ubi supra.*

But, again, the facts set up, if proved, would not invalidate the bond and mortgage in the hands of the complainant. It is alleged by the defendants that Mrs. Kahnweiler was the owner of the land; that her husband had agreed to enter into copartnership with Elijah Brown and Marcus Newman, and to contribute $10,000 as his share of the capital of the concern; that for the purpose of raising the money he executed and delivered his bond, and he and his wife executed and delivered their mortgage on Mrs. Kahnweiler's land to Elijah Brown to secure its payment, but that Brown never paid any money or gave any consideration to them or either of them for the bond and mortgage. Those facts are not in themselves enough to deprive the bond and mortgage of validity in the hands of a *bona fide* assignee for valuable consideration, without notice. *Cornish* v. *Bryan*, 2 *Stock.* 146; *Westervelt* v. *Scott*, 3 *Stock.* 80; *Andrews* v. *Torrey*, 1 *McCart.* 355; *Farnum* v. *Burnett*, 6 *C. E. Gr.* 87.

The receipt given by Elijah Brown to Kahnweiler, offered in evidence by the defendants, is as follows:

" Rec'd Nov. 28th, 1870, of Simon Kahnweiler, under the foregoing agreement, his bond and mortgage for $10,000, on which to raise money to be used under this agreement, to be contributed by him; and in case a bonus shall have to be paid or loss sustained in the negotiation thereof, said Kahnweiler is to bear and pay said loss, said mortgage being now at the register's office in Trenton for recording."

The bond and mortgage were made in favor of Elijah Brown, to secure the payment of $10,000 in one year from date, with lawful interest. The bond was made by Kahnweiler alone. The mortgaged premises are described in the mortgage by metes and bounds, and are said to be part of the property conveyed to Kahnweiler by Geissenhainer. Before the mortgage was delivered into Brown's hands to

be negotiated, it was recorded. The assignment by Elijah Brown to Disbrow, and the assignment by the latter to John Brown, are not impeached. They are not even assailed. Both are proved, and appear to be for valuable consideration. The complainant's mortgage is established.